IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BILL AND MARIE SEMITEKOL,<br>Plaintiffs, | )<br>)<br>) | |
| v. | )<br>) | Case No. 06 C 6424 |
| MONACO COACH CORPORATION | ) | Judge Manning |
| a/k/a BEAVER MOTOR COACHES, | ) | |
| DOMETIC CORPORATION, | ) | |
| VEHICLE SYSTEMS, INC., NORCOLD, | ) | |
| a subsidiary of THETFORD CORPORATION, | ) | |
| CATERPILLAR, INC., and BARRINGTON | ) | |
| MOTOR SALES, INC., | ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Bill and Marie Semitekol's desire for their dream motorhome turned sour when the 2006

Beaver Monterey 40 Laguna III motorhome they purchased in 2005 allegedly was beset by

numerous defects and nonconformities. The plaintiffs contend that these problems substantially

impaired their use and enjoyment of the motorhome. Accordingly, they have sued the various

defendants, including the dealer and select manufacturers of certain motorhome parts, for breach

of warranty and other causes of action under the Magnuson-Moss Warranty Act, 15 U.S.C. §§

2301, *et seq.* (also, "the Act" or "MMWA")[1], as well as one state law claim for violation of the

Illinois Consumer Fraud Act, 815 ILCS 505/2 *et. seq.*

---

[1]At the court's direction, the plaintiffs filed a supplement to their second amended complaint
elaborating on their jurisdictional allegations under the MMWA. *See* Dkt. #242-1. The court has
reviewed the supplement and has concluded that it has subject matter jurisdiction over the
plaintiffs' MMWA claims.

Defendants Caterpillar, Inc., Dometic Corporation, Monaco Coach Corporation, and Barrington Motor Sales, Inc., have moved to dismiss certain of the MMWA claims against them.[2] For the following reasons, the motions are denied.

## I.     Facts

The court takes the following factual allegations from the Second Amended Complaint ("SAC").

*Monaco*

On or around July 14, 2005, the plaintiffs placed a special factory order with Monaco Coach Corporation ("Monaco") for a new motorhome. The plaintiffs placed the order through Barrington Motor Sales, Inc. ("BMS"), one of Monaco's authorized dealers. Monaco has given BMS authority to distribute certain materials to customers, including warranties, owners' manuals, and informational pamphlets. Indeed, BMS gave some of Monaco's pamphlets to the plaintiffs, which noted that the plaintiffs could contact either BMS or Monaco with any customer service concerns. Moreover, Monaco advertises its affiliation with BMS on its website and provides a link to the BMS sales website, which allows customers to email one of the BMS representatives from the Monaco website. Further, Monaco arranged for BMS to install certain items requested by the plaintiffs on their motorhome.

In response to the plaintiffs' July 2005 factory order, Monaco designed and produced a 2006 Beaver Monterey 40 Laguna III motorhome. Monaco provided the plaintiffs with the option of picking up the motorhome at either the dealership or Monaco's factory in Indiana.

---

[2]The court will discuss the facts only as they relate to the defendants who have filed motions to dismiss.

Monaco provided a written warranty that covered the motorhome for a time period of either one year or twenty-four thousand miles. According to the plaintiffs, "[t]he warranty comprised an affirmation of fact, a promise to perform, and/or an undertaking by Monaco to correct any and all defects or non-conformities in the materials and/or workmanship of the Beaver [motorhome] through the performance of either repairs, replacements, refunds, or other corrective measures free of charge to the owner for the duration of the Warranty." At all relevant times, the written warranties provided by Monaco were marketed and sold by Monaco through various dealerships, including BMS. The plaintiffs claim that, "[b]ased on the position that Monaco put [BMS] in vis-á-vis its promotional materials such as Monaco's website, owner manuals, and brochures, the Plaintiffs reasonably believed that [BMS] was an agent of Monaco, authorized to act on Monaco's behalf."

On or about November 26, 2005, the plaintiffs purchased the motorhome from BMS for a total sale price of $514,663.37. The plaintiffs state that their purchase of the motorhome was accompanied with, induced by, and ultimately consummated due to the affirmations, promises, and/or undertakings specified in all of defendants' warranties, including Monaco's. The plaintiffs further allege that these warranties were the basis of the bargain of their contract. On or about November 26, 2005, the plaintiffs took possession of the motorhome.

Since their purchase, the plaintiffs have experienced numerous defects and nonconformities with the motorhome. According to the plaintiffs, these defects could not have been reasonably discovered by them prior to their acceptance of the motorhome. Among the problems were (1) a heating issue (the vehicle's water supply to the bathroom froze), (2) an air

conditioning issue (the vehicle's air conditioning unit did not adequately cool the vehicle during normal summer weather), and (3) numerous electronic and finishing issues.

The plaintiffs allege that they "delivered the motorhome to Defendants' authorized service center for repairs on numerous occasions. . . ," but do not specify which "Defendants" they are referencing. The "Defendants" (again unspecified) were unable to fix or determine the cause of the problems. The plaintiffs allege that "[o]f the 341 days the vehicle was owned by Plaintiffs, prior to revocation on November 8, 2006, the vehicle was in for repairs roughly for 180 of those 341 days." On October 5, 2006, the plaintiffs sent Monaco's agent, April Klein, a detailed written account of the problems and a request to fix the situation, but they did not receive a response.

According to the plaintiffs, Monaco's failure to repair the motorhome or pay for its repair has prevented them from utilizing it for its intended use. The defects and nonconformities remain uncorrected and uncured, and the plaintiffs allege that as a result, the value and safety of the motorhome has been substantially impaired.

*BMS*

As noted above, the plaintiffs purchased the motorhome from BMS. According to the plaintiffs, during their negotiations with BMS, BMS made several promises regarding the motorhome at issue. First, BMS promised to install "patriot style mirrors"[3] on the motorhome,

---

[3]"Patriot style mirrors" is a term not defined in any of the documents before the court. All parties appear to agree on the meaning of the term, and both use the term in the documents they have filed before the court. According to Monaco's web site, in 2006 Monaco offered three motorhome models—the 2006 Monterey (the model at issue in this case), the 2006 Marquis, and the 2006 Patriot. According to the descriptions provided by Monaco on its web site, the 2006 Patriot came standard with "Triple Head Power Controlled Heated Chrome Exterior Mirrors with Turn Indicator Lights," while the 2006 Monterey came standard with "Chrome Power Controlled

though patriot style mirrors are typically installed by the manufacturer rather than the retailer. This promise was recorded on a July 14, 2005 order for the motorhome in the form of a handwritten note: "Dealer to supply Patriot Style mirrors at no charge if possible." Second, the "Buyers [sic] Order" of November 26, 2005 (a document separate from the July 14, 2005 order discussed immediately above) contains a handwritten note stating "Warranty Received" in the section entitled "Dealer Installed Options or Services."

The plaintiffs further allege that BMS orally promised to the plaintiffs that the motorhome was warranted by BMS. According to the plaintiffs, BMS' putative oral warranty was important to the plaintiffs' decision to purchase the motorhome and that they "would never have ordered the motorhome from Barrington Motor had anyone from Barrington Motor told them that they would not be receiving a warranty from Barrington Motor."

Despite these alleged oral and written promises, the Buyers Order of November 26, 2005, contains several disclaimers. The disclaimers purport to nullify any implied warranties—including the implied warranty of merchantability—and purport to limit consequential and incidental damages. The plaintiffs noticed the disclaimers during negotiations, but the plaintiffs "did not believe that the disclaimer clauses applied to their transaction given that it[4] was left blank on the Illinois Standard Buyers Order, and such a disclaimer would have been contrary to all representations that [BMS] made to Plaintiffs regarding the existence of the

---

Heated Exterior Mirrors." The court will assume for the purposes of this motion that "Patriot style mirrors" refers to the mirrors which came standard with the 2006 Patriot model. *See* Monaco Coach Corporation Beaver Product Archive, http://www.beavermotorcoaches.com/products/archive.html (last visited September 26, 2008).

[4]The "it" is unspecified.

warranties." SAC at ¶ 232. In addition, the plaintiffs state that at no time prior to finalizing the purchase of the motorhome did anyone from BMS inform them that they were purchasing the motorhome "as is."

As noted above, after the purchase, the plaintiffs experienced numerous problems with the motorhome. The plaintiffs allege that they discussed the motorhome's problems with BMS on multiple occasions but BMS has not cured the problems with the motorhome.

*Caterpillar and Dometic*

The plaintiffs allege that Dometic designed, produced, and installed the air conditioning units in their motorhome and provided one or more written warranties covering the air conditioners. As to Caterpillar, the plaintiffs allege that it designed, created and produced the engine installed in the motorhome and provided one or more written warranties for the engine. According to the plaintiffs, these warranties from Caterpillar and Dometic (as well as those received from the other defendants) induced the plaintiffs to purchase the motorhome and provided a basis of the bargain. After purchasing the motorhome, the plaintiffs experienced problems with the motorhome, including the air conditioning units and the engine. According to the plaintiffs, they "delivered the motorhome to Defendants' [unspecified] authorized service centers for repair" but "Defendants were unable to establish that they had fixed the problem." SAC at ¶ 97. As to Caterpillar, the plaintiffs allege that it has failed to repair the motorhome or provide payment for such repair.

*Notice of Revocation*

On November 8, 2006[5], the plaintiffs (through counsel) sent BMS and defendants Monaco, Caterpillar, Vehicle Systems, and Norcold, among others, a notice stating that the plaintiffs were revoking their acceptance of the motorhome and that the plaintiffs would be filing a lawsuit prior to the expiration of Monaco's one-year warranty of the motorhome.

The defendants Caterpillar, Dometic, Monaco and BMS have each filed motions to dismiss, which the court addresses in turn.

## II.    Motion to Dismiss Standard

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  As noted by the Seventh Circuit:

> The Supreme Court has interpreted that language to impose two easy-to-clear hurdles.  First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)*(quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) *(alteration in Bell Atlantic* ).  Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if it does not, the plaintiff pleads itself out of court. *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n.14.

*E.E.O.C. v. Concentra Health Services, Inc*., 496 F.3d 773, 776 (7th Cir. 2007).  *See also*

*Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007) (observing that

---

[5]On several occasions, the plaintiffs refer to the notice of revocation as having been sent on November 7, 2005; however the actual letter, attached as Exhibit G to the SAC, is dated November 8, 2006.  Accordingly, the court assumes that the reference to November 7, 2005, is a mistake and uses the November 8, 2006, date in its statement of facts.

Supreme Court in *Bell Atlantic* "retooled federal pleading standards" such that a complaint must now contain "enough facts to state a claim to relief that is plausible on its face.").

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the allegations in the complaint as true, viewing all facts, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic,* 127 S.Ct. at 1964-65 (citations omitted).

### III.     Analysis

A.     Caterpillar

Caterpillar has moved to dismiss Count VI of the SAC, the only count stated against it, which alleges a claim under the MMWA that Caterpillar breached its written warranty to the plaintiffs. The parties agree that Caterpillar provided a written limited warranty to the plaintiffs upon their purchase of the motorhome, which states that:

> Caterpillar Inc. or any of its subsidiaries ("Caterpillar") warrants new C9 engines powering on-highway vehicles and operating within the geographic area serviced by authorized Caterpillar dealers located in USA, Canada or Mexico, to be free from defects in material and workmanship.

The warranty states that Caterpillar has several responsibilities "[i]f a defect in material or workmanship is found during the warranty period. . . ." including providing parts and reasonable and customary labor necessary to correct the defect. The warranty also contains a disclaimer of any other warranties including implied warranties of merchantability and fitness for a particular

purpose as well as any responsibility for incidental or consequential damages. According to the SAC, the plaintiffs' "purchase of the motorhome was accompanied with, induced by, and ultimately consummated due to the affirmations, promises, and/or undertakings specified in all of Defendants' warranties, including Caterpillar's warranty." SAC at ¶ 185.

Caterpillar asserts that the claims against it should be dismissed because the plaintiffs have failed to specifically allege any defect in the material or workmanship of the engine, which is the only part that Caterpillar's warranty covers.[6] The court disagrees. The plaintiffs allege that they had a warranty from Caterpillar for, "among other things," the engine installed in the motorhome. SAC at ¶ 181. They further allege that "[t]he warranty comprised an affirmation of fact, a promise to perform, and/or an undertaking by Caterpillar to correct any and all defects or non-conformities in the materials and/or workmanship of the engine installed in the motorhome. . . ." *Id*. at ¶ 182. According to the plaintiffs, as soon as they took possession of the motorhome, numerous defects and nonconformities became apparent, including that the "check engine" light flashed when the plaintiffs engaged the cruise control function in the motorhome. The plaintiffs further allege that they sent a notice of revocation of acceptance to Caterpillar and since that time Caterpillar has refused to "take responsibility for any problems with the motorhome," "refuses to repair or pay for the repair of the defective parts," and the "defects and nonconformities remain uncorrected and uncured. . . ." *Id.* at ¶¶ 191, 195.

The court finds that these allegations are sufficient to state a plausible claim for relief for a breach of warranty under the MMWA and to put Caterpillar on notice of the claim against it.

---

[6]Caterpillar fails to cite any caselaw in its memorandum in support of its motion to dismiss or reply. The court construes Caterpillar's argument to be that the plaintiffs have failed to allege sufficient facts in support of their breach of warranty claims against Caterpillar.

Contrary to Caterpillar's assertion that the plaintiffs must plead the details of any defects with the engine, the plaintiffs have alleged that the engine had problems. The specifics regarding the alleged defects in the motorhome's engine can be obtained during discovery. *Bell Atlantic*, 127 S. Ct. at 1964-65 (a complaint "does not need detailed factual allegations") (citations omitted).

Finally, Caterpillar asserts that their motion should be granted because nowhere do the plaintiffs allege that they complied with their obligations under the warranty, including timely notification to Caterpillar of a warrantable failure and delivery of the motorhome to an appropriate repair shop. Again, however, the plaintiffs need not plead all of the factual details or elements of their claim. Moreover, the SAC alleges that "Plaintiffs have met all obligations and preconditions as provided in the Warranty prior to filing the instant suit." *Id.* at ¶ 201. Accordingly, Caterpillar's motion to dismiss is denied.

B.      Dometic

Dometic designed, manufactured, and warranted the two roof-top air conditioning units that were on top of the plaintiff's motorhome. The plaintiffs allege a breach of warranty claim against Dometic asserting that soon after taking delivery of the motorhome, they experienced problems with the air conditioning. The plaintiffs further allege that they delivered the motorhome to "the Defendants' authorized service centers for repair" but that "Defendants were unable to establish that they had fixed the problem." SAC at ¶ 97.

Dometic moves to dismiss the claim against it on the ground that on December 19, 2007, they served the plaintiffs with an offer of judgment under Fed. R. Civ. P. 68 for $2,901.00, "plus a sum equal to the aggregate amount of the costs and expenses reasonably incurred by the plaintiffs for or in connection with the commencement and prosecution of this action against

Dometic."  The plaintiffs did not accept Dometic's offer of judgment within the time provided by

the rule.  "'Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute

over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed.

R. Civ. P. 12(b)(1), because he has no remaining stake.'"  *Holstein v. City of Chicago*, 29 F.3d

1145, 1147 (7th Cir. 1994)(citation omitted).

As noted by the Seventh Circuit:

> [I]f the complaint is formally sufficient but the contention is that there is in fact no
> subject matter jurisdiction, the movant may use affidavits and other material to
> support the motion. The burden of proof on a 12(b)(1) issue is on the party
> asserting jurisdiction.  And the court is free to weigh the evidence to determine
> whether jurisdiction has been established.

*United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003)(internal

citation omitted).  Accordingly, each side has referred to evidence outside of the complaint.

Dometic argues that because the cost to replace the original Dometic air conditioning

units (including labor) with brand new units was less than the amount of their Rule 68 offer to

the plaintiffs, the claim against them should be dismissed for lack of subject matter jurisdiction.

The plaintiffs, however, contend that because the offer of judgment did not provide full relief,

Dometic's motion to dismiss must fail.  Specifically, it argues that Dometic's offer does not

include reimbursement for incidental and consequential damages, does not offer the total

replacement cost of the Dometic-warranted parts in the motorhome, and is ambiguous as to

whether attorney's fees is to be subtracted from the offer or if the plaintiffs may petition for them

as costs and expenses.

1.      *Was the exclusion for incidental and consequential damages
        unconscionable*?

First, the plaintiffs argue that the offer does not include reimbursement for any incidental or consequential damages. The regulations implementing the MMWA specifically contemplate that incidental and consequential damages may be excluded in a written warranty. In particular, this regulation section requires that a warrantor shall "clearly and conspicuously disclose":

> Any exclusions of or limitations on relief such as incidental or consequential damages, accompanied by the following statement, which may be combined with the statement required in paragraph (a)(7) of this section:
>
>> Some States do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you.

The plaintiffs do not argue that the exclusion of the incidental and consequential damages in the Dometic warranty was not clear and conspicuous. Rather, they assert that the exclusion was unconscionable, relying on the relevant section of the Illinois Uniform Commercial Code, which states that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." 810 ILCS 5/2-719(3).[7]

In support, the plaintiffs cite to *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 614-15 (2006). In *Razor*, the Illinois Supreme Court articulated several factors that might lead a court to conclude that a limitation of damages provision is unconscionable, including that the warranty was pre-printed, a consumer was involved, a disparity in bargaining power existed, and a failure

---

[7]The MMWA does not set out requirements for limited warranties. However, as noted by the plaintiffs, the MMWA allows plaintiffs to seek to enforce limited warranties, such as the one at issue here, by looking to state law causes of action. *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) ("The [MMWA] . . . allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action.") (citation omitted) (vacated and remanded on other grounds); *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 614-15 (2006) ("The [MMWA] does not set out requirements for limited warranties" so "to determine the enforceability of a consequential damages disclaimer in a limited warranty, we look to state law.").

to make the warranty containing the disclaimer available to the plaintiff at or before the time that the sale contract was signed. *Id.* at 622-23. The *Razor* court particularly relied upon the last factor, noting that "[t]he warranty and its consequential damages exclusion were contained in the owner's manual, which was placed in the glove compartment of the car, where it was unavailable to the consumer until after she took delivery." *Id.* at 623. Indeed, the Illinois Supreme Court went on to state that "notice of the contents of the warranty must be provided to the purchaser at or before the time when the purchase occurs. . . ." *Id*. at 624.

The plaintiffs assert that the warranty containing the damage exclusion language was not provided to them until after they had signed the vehicle purchase order. According to Mr. Semitekol's certification attached to the plaintiffs' response brief, the first time he saw the warranty was when he found it in the motorhome's desk drawer after picking up the motorhome and returning home.

Dometic contends that the court should not consider the affidavit for two reasons. First, it argues that it would be unfair to impose reasoning used in the *Razor* court on it because it was merely the warrantor, not the seller. According to Dometic, it, as the manufacturer-warrantor, has no opportunity to ensure that the buyer reviews the terms of the warranty prior to sale and so should not be held responsible if the seller fails to give the buyer a copy of the warranty. Although Dometic does not expressly refer to the FTC regulations implementing the MMWA, the regulations differentiate between the warrantor's (here, Dometic) and the seller's (here, BMS) obligations with respect to a warranty as follows:

> § 702.3 Pre-sale availability of written warranty terms.
>
> The following requirements apply to consumer products actually costing the consumer more than $15.00:

(a) Duties of seller. Except as provided in paragraphs (c) through (d) of this section, the seller of a consumer product with a written warranty shall make a text of the warranty readily available for examination by the prospective buyer by:

(1) Displaying it in close proximity to the warranted product, or

(2) Furnishing it upon request prior to sale and placing signs reasonably calculated to elicit the prospective buyer's attention in prominent locations in the store or department advising such prospective buyers of the availability of warranties upon request.

(b) Duties of the warrantor.

(1) A warrantor who gives a written warranty warranting to a consumer a consumer product actually costing the consumer more than $15.00 shall:

(i) Provide sellers with warranty materials necessary for such sellers to comply with the requirements set forth in paragraph (a) of this section, by the use of one or more by the following means:

(A) Providing a copy of the written warranty with every warranted consumer product; and/or

(B) Providing a tag, sign, sticker, label, decal or other attachment to the product, which contains the full text of the written warranty; and/or

(C) Printing on or otherwise attaching the text of the written warranty to the package, carton, or other container if that package, carton or other container is normally used for display purposes. If the warrantor elects this option a copy of the written warranty must also accompany the warranted product; and/or

(D) Providing a notice, sign, or poster disclosing the text of a consumer product warranty. If the warrantor elects this option, a copy of the written warranty must also accompany each warranted product.

(ii) Provide catalog, mail order, and door-to-door sellers with copies of written warranties necessary for such sellers to comply with the requirements set forth in paragraphs (c) and (d) of this section.

(2) Paragraph (a)(1) of this section shall not be applicable with respect to statements of general policy on emblems, seals or insignias issued by third

parties promising replacement or refund if a consumer product is defective, which statements contain no representation or assurance of the quality or performance characteristics of the product; provided that

(i) The disclosures required by § 701.3(a)(1) through (9) of this part are published by such third parties in each issue of a publication with a general circulation, and

(ii) Such disclosures are provided free of charge to any consumer upon written request.

The plaintiffs attempt to rely on *Razor* regarding Dometic's obligations, however, is inapposite. In *Razor*, the Illinois Supreme Court acknowledged that the above-quoted regulation differentiates between the duties of warrantors and sellers, but that Hyundai, as the defendant and warrantor, "chose[] not to rely on this distinction." *Razor*, 854 N.E.2d at 625. It went on to state that "it is clear that Hyundai has utterly failed to raise any argument based on section 702.3 [laying out the different duties for a warrantor and seller] or any differentiation of responsibility between itself and [the seller]." *Id*. Thus, the Illinois Supreme Court found against Hyundai, the warrantor, on the ground that there was no evidence that the plaintiff-buyer had received the warranty, which included the limitation of damages provision, prior to making the contract.

Importantly, the *Razor* court went on to state that "[w]e intimate no suggestion as to what the outcome of this or any future case might be if this [argument regarding the different duties of a seller and warrantor] or any other argument were properly raised before this court or the circuit court." *Id*. Because Dometic has raised the argument that its duties as the warrantor did not include directly providing a copy of the warranty to the plaintiff before the sale, the court finds *Razor* inapposite.

Thus, under the relevant regulations, Dometic's only responsibility was to provide a copy to the seller, which it apparently did because the plaintiff attests in his certification that a copy of the warranty was located in the plastic file box that was in the motorhome's desk drawer.

Nevertheless, in addition to arguing that the damages limitation was unconscionable on the ground that Dometic failed to provide the warranty to the plaintiff prior to sale, the plaintiffs argue that the exclusion was unconscionable due to the fact that the plaintiffs were purportedly not in an equal bargaining position with Dometic. Dometic, however, does not substantively address this aspect of the plaintiff's response (i.e., whether the exclusion was unconscionable based on factors other than whether it was provided to the plaintiffs pre-sale). The court, therefore, has no basis on which to conclude that the exclusion was not unconscionable. Therefore, it cannot make a determination as to whether Dometic's offer of judgment would have compensated the plaintiffs for all of their alleged losses.

In addition, the plaintiffs assert in their response that in addition to the damages exclusion being unconscionable, the Dometic warranty failed of its essential purpose. 810 ILCS 5/2-719(2). Under § 2-719, if a warranty fails of its essential purpose, "remedy may be had as provided in this Act." From this language, the plaintiffs appear to argue that because the warranty fails of its essential purpose, they can seek consequential and incidental damages. If that is the case, then the offer of judgment by Dometic was insufficient and the case is not moot.

The *Razor* court also addressed the interplay between a warranty failing its essential purpose and the validity of a damages exclusion provision. Specifically, the *Razor* court expressly held that:

> Contractual limitations or exclusions of consequential damages will be upheld unless to do so would be unconscionable, regardless of whether the contract also contains a limited remedy which fails of its essential purpose.

*Razor*, 854 N.E.2d at 618 (citations omitted).  In other words, simply because a court concludes that a warranty has failed of its essential purpose does not mean that an exclusion of remedy clause also automatically fails.  Thus, to the extent that the plaintiffs argue that because the warranty fails as to its essential purpose, then it per se may be entitled to consequential and incidental damages, that position is incorrect.

However, the *Razor* court further noted that:

> A seller's deliberate or negligent failure to supply a limited remedy can be taken into consideration in determining whether enforcement of a consequential damages waiver is unconscionable. . . . [W]e believe that a plaintiff must be allowed to point to a defendant's conduct, or any other circumstance which he believes would make enforcement of a consequential damages exclusion unconscionable.  But the plain language of the UCC indicates that this step, of evaluating whether the exclusion is unconscionable, must be taken before a contractual consequential damages exclusion may be done away with.

*Id.* at 621-22 ("")(citations omitted).  Thus, whether the warranty fails of its essential purpose is one factor to be considered in analyzing the unconscionability of an exclusion provision.  Again, however, as with the issue of unequal bargaining power, Dometic wholly fails to address this issue.  Accordingly,  Dometic's motion to dismiss on the ground that its Rule 68 offer of judgment caused the case to become moot is denied in light of the fact that it has not demonstrated that its offer would fully compensate the plaintiffs.[8]

---

[8]Consideration of the issue of whether Dometic's offer included attorney's fees and other costs, as discussed by the parties in their briefing, is unnecessary given that the court has concluded that Dometic's motion to dismiss is denied on the ground of failure to demonstrate unconscionability. In other words, because the issue of unconscionability must be resolved in order to properly address the mootness argument, regardless of any conclusion as to the attorney's fees or other costs, the court will not consider the argument regarding attorney's fees and other costs.

2. *Have the plaintiffs pled themselves out of court*?

Dometic also appears to be contending that the court should dismiss the SAC for failure to state a claim under Rule 12(b)(6) because the plaintiffs have pled themselves out of court. Specifically, Dometic notes that the SAC alleges that Dometic's and Monaco's warranties "together induced Plaintiffs to purchase the motorhome," see SAC at ¶ 93, and that the warranties were the basis of the bargain for the sale. Thus, Dometic argues, if the warranties induced the plaintiffs to buy the motorhome and provided a basis of the bargain for the sale, the plaintiffs must have read them. Dometic notes, however, that contrary to the allegations in the SAC, Mr. Semitekol's certification, attached to the plaintiff's response brief, states that he did not have (and therefore could not have read) the warranty or the damages exclusion prior to the sale. Thus, Dometic contends that the plaintiffs have pled themselves out of court. Specifically, Dometic asserts that "[e]ither Dometic's warranty induced the purchase of the vehicle and its exclusion of incidental and consequential damages was not unconscionable or its warranty was not the basis of the bargain and plaintiffs are not entitled to recover for a breach of warranty under the Act."

Dometic appears to be requesting dismissal under Fed. R. Civ. P. 12(b)(6). It is well-established, however, that with respect to a motion under Rule 12(b)(6), the court can only consider the allegations made within the four corners of the complaint. *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). Consideration of evidence outside the allegations of the complaint would be appropriate only if the instant motion is converted to a motion for summary

judgment.[9]  Fed. R. Civ. P. 12(d)("If, on a motion under Rule 12(b)(6) ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  The court declines to convert the instant motion to dismiss into a motion for summary judgment as it relates to this argument; thus, it cannot consider Mr. Semitekol's certification with respect to this argument.  Accordingly, the court denies Dometic's motion to dismiss the plaintiffs' claim on the ground that they have pled themselves out of court.

Nevertheless, the court notes that it is troubled by the fact that the Mr. Semitekol's allegations in the SAC appear to be at odds with the statements made in his certification.  The court trusts that as the record is more fully developed, this apparent inconsistency will be resolved.

## C.    Monaco

The plaintiffs claim that the motorhome's defects and Monaco's failure to correct them violated Monaco's written warranty and the implied warranty of merchantability arising under Illinois law, as well as the MMWA.  Monaco has moved to dismiss Count II, which alleges that Monaco breached the implied warranty of merchantability.

The MMWA allows a consumer to bring suit where he claims to be "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this [Act] or under a written warranty, implied warranty, or service contract."  15 U.S.C. § 2310(d).

---

[9]The court notes that it considered the certification with respect to Dometic's mootness argument as this goes to this court's subject matter jurisdiction.  In such circumstances, the court may consider matters outside the four corners of the complaint.

An "implied warranty" is defined as "an implied warranty arising under State law (as modified by sections 108 and 104(a)) [15 U.S.C. §§ 2308 and 2304(a)] in connection with the sale by a supplier of a consumer product" 15 U.S.C. § 2301(7). When analyzing a breach of implied warranty claim under the Act, courts sitting in Illinois must apply Illinois law and provisions of the Illinois Uniform Commercial Code ("Illinois UCC"). *See Kowalke v. Bernard Chevrolet, Inc.*, No. 99 C 7980, 2000 WL 656660, *4 (N.D. Ill. March 23, 2000). *See also Smith v. Monaco Coach Corp.*, 334 F. Supp. 2d 1065, 1068 (N.D. Ill. 2004)(in analyzing a MMWA claim, the court "must look to relevant Illinois law to determine whether an implied warranty was created").

Monaco argues that Illinois law requires privity of contract (i.e., a direct buyer-seller relationship) to give rise to a claim for purely economic damages under a breach of the implied warranty theory. It then notes that it was not the seller (rather, BMS was), and concludes that the plaintiffs cannot allege against it a claim for breach of an implied warranty. *Voelker v. Porsche Cars North America, Inc.,* 353 F.3d 516, 525 (7th Cir. 2003)(considering whether a valid claim for breach of the implied warranty of merchantability under the MMWA must allege privity under Illinois law, noting that the MMWA "[did] not modify, or discuss in any way, a state's ability to establish a privity requirement," and concluding that Illinois law required privity to recover economic damages for breach of implied warranty)(*citing Kowalke*, 2000 WL 656660 at *5 and *Larry J. Soldinger Assoc. v. Aston Martin Lagonda of N. Am., Inc.*, No. 97 C 7792, 1999 WL 756174, at *9 (N.D. Ill. Sept. 13, 1999)). *See also Snyder v. Komfort Corp,* No. 07 C 1335, 2008 WL 2952300, at *6 (N.D. Ill. July 30, 2008)("the *Voelker* court did not adopt the Illinois court's interpretation that the [MMWA] broadened the UCC's requirements by allowing for non-privity parties to bring implied warranty claims*")*.

In response, the plaintiffs implicitly acknowledge that privity does not exist pursuant to a direct buyer-seller relationship, but contend that privity is established through: (1) an agency relationship between BMS (the seller) and Monaco and (2) the existence of an express warranty by Monaco.

The test of agency is the ability of the principal to control the method or manner of accomplishing a task by the alleged agent, as well as the agent's ability to subject the principal to liability. *Williams v. Ford Motor Co.*, 990 F. Supp. 551, 554 (N.D. Ill. 1997)(citing *Wargel v. First National Bank*, 460 N.E.2d 331, 334 (Ill. App. Ct. 1984)). Agency may exist through either actual or apparent authority. *Id.* at 555. Apparent agency exists if (1) the principal consented to or knowingly acquiesced in the agent's exercise of authority, (2) based on the actions of principal and agent, the third person reasonably concluded that the party was an agent of the principal, and (3) the third person justifiably relied on the agent's apparent authority to his detriment. *Id.* (citing *Letsos v. Century 21-New West Realty*, 675 N.E.2d 217, 224 (Ill. App. Ct. 1996)).

The plaintiffs contend that the agency determination is one of fact and assert that several factors favor a finding of agency in this context. The court agrees that whether an agency relationship has been established between the parties is one of fact which is not properly resolved on a motion to dismiss. *See Williams*, 990 F. Supp. at 556 (holding that plaintiff's allegations of an agency relationship between manufacturer and dealership were enough to survive motion to dismiss and noting that "we are dealing with notice pleading here"); *Azimi v. Ford Motor Co.*, 977 F. Supp. 847, 851 (N.D. Ill. 1996)(holding that "a dealership may be an agent of the manufacturer" and finding that plaintiff's allegations regarding manufacturer's logo displays,

training program for dealership personnel, and outsourcing of repairs were "sufficient to assert the existence of 'apparent' agency relationship" between the manufacturer and dealer).

The court recognizes that several courts in this district and one in the Southern District of Illinois have rejected the agency argument, with certain decisions noting that allowing such an argument "would constitute an end run around the privity requirement" stated by the Illinois Supreme Court and recognized by the Seventh Circuit. *Zaro v. Maserati,* No. 07 C 3565, 2007 WL 4335431, at *4 (N.D. Ill. Dec. 6, 2007); *Watson v. Coachmen Recreational Vehicle Co.,* No. 05-CV-524-DRH, 2006 U.S. Dist. LEXIS 15087, at *29 (S.D. Ill. Mar. 31, 2006); *Finch v. Ford Motor Co.*, 327 F. Supp. 2d 942, 946 (N.D. Ill. 2004); *Kutzle v. Thor Indus., Inc*., No. 03 C 2389, 2003 WL 21654260, at *6 (N.D. Ill. Jul. 14, 2003). *See also IWOI, LLC v. Monaco Coach Corp*., --- F. Supp. 2d ----, 2008 WL 4531780, at *5 (N.D. Ill. Oct. 9, 2008).

However, those cases are factually distinguishable at this stage of the litigation due to the plaintiff's failure in those cases to point to any allegations in support of an agency relationship. In *Kutzler,* the court expressly noted that "the plaintiff does not allege the parameters of this alleged agency relationship. . . .". *Kutzle*, No. 03 C 2389, 2007 WL 21654260, at *6. The *Zaro* court does not discuss the facts of its case in the context of the agency argument but merely restates the *Kutzle* court's concern about allowing an "end run" around the privity requirement. *Zaro*, No. 07 C 3565, 2007 WL 4335431, at *4. In *Finch,* the court found that the plaintiffs had failed to "establish any factual parameters of . . . the alleged agency relationship." *Finch*, 327 F. Supp. 2d at 946. The *Watson* court noted that the plaintiff "fails to indicate in his Response any allegations to support his argument of agency." *Watson*, No. 05-CV-524-DRH, 2006 U.S. Dist. LEXIS 15087, at *28. Finally, the *IWOI* court stated that the only allegation in that case was that

Monaco exerted "great control" over BMS and noted that "bare allegations of an agency relationship between the manufacturer and dealer are insufficient." *IWOI*, 07 C 3453, 2008 WL 4531780, at *5.

Here, however, the plaintiffs allege several factors which may be relevant to demonstrating an agency relationship. Specifically, the plaintiffs have alleged that BMS was (and was held out to be) Monaco's "authorized Beaver Monterey dealership", that Monaco advertises BMS on its website in its "Dealer Finder" function, that BMS distributed Monaco's warranties and owners' manuals to the public, that Monaco advised the plaintiffs that they could contact BMS with any problems or customer service concerns, that BMS was to install certain items requested by the plaintiffs on the motorhome, and that the plaintiffs were given the option of picking up the motorhome at either the dealership or Monaco's factory. These allegations are sufficient to allege agency at this stage of litigation and to allow discovery to proceed. Although Monaco points to the disclaimer in its warranty that "the dealer is not our agent" and argues that BMS merely purchased the motorhomes for resale and thus could not have been acting as Monaco's agent, consideration of these arguments necessarily requires the court to make factual determinations, which is improper on a motion to dismiss.

In so ruling, the court does not opine on whether an agency relationship has been established or whether the showing of an agency relationship suffices to establish privity for purposes of the MMWA. The defendants do not discuss the latter issue in their motion to dismiss, so this issue is not properly before the court.[10] Accordingly, the court denies Monaco's

---

[10]This court notes for reference that several of the decisions by the other district courts fault the plaintiff for having failed to cite any authority regarding whether contractual privity may be established through an agency relationship in Illinois. *See Zaro,* No. 07 C 3565, 2007 WL

motion to dismiss the implied warranty claim against it.[11]  The court reiterates, however, that it makes no determination as to whether the privity required under the MMWA can be established through an agency relationship, if one is demonstrated.  For the reasons stated above, Monaco's motion to dismiss Count II of the SAC is denied.

D.     Barrington Motor Sales ("BMS")

1.     *Breach of Implied Warranty of Merchantability* (Count XIV)

As noted already, the MMWA authorizes a consumer to sue for breach of a state law implied warranty.  *See* 15 U.S.C. § 2310(d)(1); *see also* 15 U.S.C. § 2301(7) (defining "implied warranty" as "an implied warranty arising under State law").  The parties agree that Illinois law governs; therefore, the court will apply Illinois law to determine whether any implied warranties exist in this case.

Under Illinois law, "[u]nless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  810 ILCS 5/2-314(1).  Illinois law allows a party to disclaim the implied warranty of merchantability in writing if the disclaimer is conspicuous and either mentions the term "merchantability" or uses language like "as is."  810 ILCS 5/2-316(2)-(3); *accord Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 526 (7th Cir. 2003).  Notwithstanding Illinois law, the MMWA prohibits disclaimer of an implied warranty if a supplier "makes any written warranty to

---

4335431, at *4;  *Finch*, 327 F. Supp. 2d at 945-46*; Kutzle*, No. 03 C 2389, 2003 WL 21654260, at *6; *Watson*, No. 05-CV-524-DRH, 2006 U.S. Dist. LEXIS 15087, at *27-29.

[11]Because the court has denied Monaco's motion to dismiss based on the factual issues regarding the existence of an agency relationship, the court need not address the plaintiffs' alternate argument that privity is created by the express warranty.

the consumer with respect to such consumer product." 15 U.S.C. § 2308(a); *see also* 15 U.S.C. § 2308(c). A "written warranty" is defined under the Act as:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6). Courts carefully apply § 2301(6) to determine whether a written statement qualifies as a "written warranty" for purposes of the Act. *See, e.g., Skelton v. General Motors Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981) (describing, with approval, a district court's holding that a written promise was not a written warranty under § 2301(6)(A) because the written promise contained no time period during which it was effective)*; In re Sears, Roebuck & Co.*, No. MDL-1703, 05 C 4742, 05 C 2623, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006)(holding that a "Made in USA" marking on tools sold by the defendant was not a written warranty under the Act); *Larry J. Soldinger Assoc., Ltd. v. Aston Martin Lagonda of N. Am., Inc.*, 97 C 7792, 1998 WL 151817, at *2 (N.D. Ill. Mar. 27, 1998)(holding that the plaintiff did not "allege any facts to establish that [defendant] issued a written warranty"); *Lytle v. Roto Lincoln Mercury & Subaru, Inc.*, 521 N.E.2d 201, 205 (Ill. App. Ct. 1988) (holding that a booklet given to the buyer of a new car did not satisfy the definition of "written warranty" under § 2301(6)).

The plaintiffs claim that BMS "provided Plaintiffs with two separate written warranties" and therefore, BMS was unable to disclaim the implied warranty of merchantability. The

plaintiffs also claim that BMS's disclaimers were inconspicuous and unconscionable under state law and thus are invalid. The court will address these arguments in turn.

    a.    <u>Written Warranties</u>

        **i.**    *The Promise to Install Patriot Style Mirrors*

The first putative written warranty presented by the plaintiffs is BMS's purported promise to install "patriot style" mirrors, which was recorded in a handwritten note on a purchase order dated July 14, 2005 ("Purchase Order"). Specifically, this note stated "Dealer to supply patriot style mirrors at no charge if possible." [12]

With respect to 15 U.S.C. § 2301(A), the court notes that the plaintiffs claim only that BMS promised to "supply" the motorhome with patriot style mirrors. The statement does not mention "replacement" or any other remedial action, does not state that the mirrors or any other part of the motorhome would be "defect free," and does not state that the mirrors would meet any "specified level of performance" over any particular time period. *See* 15 U.S.C. § 2301(A). Thus, the promise fails to satisfy the definition of "written warranty" set forth in 15 U.S.C. § 2301(A). *See In re Sears, Roebuck & Co.*, 2006 WL 1443737, at *4 (discussing a "Made in USA" marking on tools sold by the defendant and holding that "[a]lthough the phrase does arguably relate to the 'nature' of the material or workmanship, it fails to satisfy the defect-free/performance prong of § 2301(6)(A)"); *see also Skelton*, 660 F.2d at 316 n.7(discussing, with

---

[12]BMS claims that, even if this promise qualifies as a "written warranty" under the MMWA, it was superseded by the later-in-time Buyers Order, dated November 26, 2005. The plaintiffs respond that BMS is estopped from arguing that the Buyers Order supersedes the Purchase Order because BMS "ratified" the Purchase Order when it actually installed the mirrors in January of 2006. But the court need not address these arguments, because the promise to install "patriot style" mirrors does not meet the definition of "written warranty" set forth in either 15 U.S.C. § 2301(6)(A) or (B).

approval, the district court's holding that a written promise from a defendant was not a written warranty under § 2301(6)(A) because the written promise contained no time period); *see also* 16 C.F.R. § 700.3 (stating that a product disclosure that does not contain "a specified time period to which the disclosure relates" is not a written warranty for purposes of the Act).

As for 15 U.S.C. § 2301(B), BMS's written statement that it would supply the patriot style mirrors "if possible" was not a promise to "refund, repair, replace, or take other remedial action . . . *in the event* that such product fails to meet the specifications set forth in the undertaking . . . ." 15 U.S.C. § 2301(6)(B) (emphasis added). Indeed, Barrington's "undertaking" to install the mirrors does not mention any "specifications" at all.

The promise to install "patriot style" mirrors therefore fails the definition of "written warranty" under the MMWA.

        ii**.**    *The "Warranty Received" Statement*

The plaintiffs also claim that the "Warranty Received" statement under the section in the November 26, 2005, Illinois Standard Buyers Order titled "DEALER INSTALLED OPTIONS OR SERVICES" constituted a "written warranty." According to the plaintiffs, the statement "Warranty Received" establishes that BMS "specifically warranted that it, the dealer, provided Plaintiffs with a warranty for the motorhome." Response at 25 (emphasis in original). The plaintiffs go on to argue that BMS, as the drafter of the Buyers Order, could have written it so it was clear that it was merely passing along the warranties of the various manufacturers who contributed parts to the motorhome, but it did not. As such, the plaintiffs argue, the Buyers Order should be construed against BMS and the court should conclude that "Warranty Received" is a written warranty by BMS.

However, a writing that merely states "Warranty Received" does not contain a promise that the item sold is defect-free or will meet a "specified level of performance" over a certain period of time, and thus fails to meet the definition of "written warranty" set forth in 15 U.S.C. § 2301(6)(A).  Furthermore, the "Warranty Received" statement does not "set forth" any "specifications" which would be used to determine when the promise is triggered, and thus fails the definition of "written warranty" set forth in 15 U.S.C. § 2301(6)(B).

The plaintiffs argue that it is a question of fact whether the "Warranty Received" statement is a "written warranty," and cites *Hamilton v. O'Connor Chevrolet*, 399 F. Supp. 2d 860 (N.D. Ill. 2005), for support.  However, *Hamilton* is distinguishable from the present case because in *Hamilton*, the putative written warranty at issue actually stated that the defendant would "check & repair brakes," and it provided a specific time period during which it would be effective.  *Id.* at 872.  Thus, the wording of the statement in *Hamilton* created an issue of material fact that could not be resolved by the court on a motion for summary judgment.  *Id.*  In contrast, in the present case, the "Warranty Received" statement does not contain a promise to repair the motorhome, and does not contain any other language that would suggest it falls under the definition of "written warranty" in § 2301(6).  Thus, it is appropriate, in the context of a motion to dismiss, to conclude that the statement fails to satisfy the definition of "written warranty" set forth in the Act.  *See Soldinger*, No. 97 C 7792, 1998 WL 151817, at *2 (in the context of a motion to dismiss, holding that "Plaintiff does not allege any facts to establish that [defendant] issued a written warranty").

     iii.     *Adoption of Monaco warranty*

The plaintiffs also appear to argue that BMS adopted the express warranty of Monaco. Response at 25. However, their entire argument related to the subject is the statement that Monaco's warranty and BMS's bill of sale were so closely linked that "BMS adopted Monaco's warranty" and cite to one case in support. The plaintiffs do not develop their argument and therefore have forfeited reliance on it.

Even, however, were the court to consider the substantive argument, it would reject it. Under Federal Trade Commission regulations, a supplier such as BMS becomes bound by a written warranty of another entity if the supplier "adopts" the written warranty under state law. *See* 16 C.F.R. § 700.4. In Illinois, "the mere delivery, presentation or explanation of a manufacturer's warranty, without more, does not render a dealer a cowarrantor by adoption." *Soldinger*, 97 C 7792, 1998 WL 151817, at *3 (quoting *Lytle*, 521 N.E.2d at 203) (internal quotation marks and brackets omitted).

In the case at bar, BMS wrote "Warranty Received" on the Buyers Order, but BMS did not explicitly state that it was adopting the manufacturer's warranty or incorporating the warranty into one of the documents BMS presented to the plaintiffs. *Cf. Felde v. Chrysler Credit Corp.*, 580 N.E.2d 191, 197 (Ill. App. Ct. 1991) (noting that dealer adopted a manufacturer's written warranty because the dealer invoice "explicitly incorporated" the warranty). Indeed, the plaintiffs have not pleaded any facts suggesting that BMS adopted the manufacturer's warranty. Thus, the "only inference supported by the [Buyers Order] is that [BMS] merely 'delivered' and 'presented' [the manufacturer's] warranty" to the plaintiffs. *Soldinger*, 1998 WL 151817, at *3.

b.      Barrington's Disclaimers

Because the court has concluded that BMS did not make a "written warranty" covering the motorhome at issue, the MMWA could not prevent BMS from disclaiming the implied warranty of merchantability under Illinois law. *See* 15 U.S.C. § 2308(a). The plaintiffs appear at one point to assert that the implied warranty disclaimer is nevertheless invalid because it is inconspicuous. They also claim that the disclaimers printed on the Buyers Order of November 26, 2005, were ineffective because they were procedurally unconscionable.

i.    *Conspicuousness*

Before moving on to the unconscionability issue, Illinois law states that written disclaimers of the implied warranty of merchantability must be "conspicuous" and must "mention merchantability" or use language like "as is." 810 ILCS 5/2-316(2)-(3). Examining the Buyers Order, which is attached to the SAC and is thus incorporated into the SAC, it is clear that the disclaimers issued by BMS satisfy the applicable state law rules. The heading of the section containing the disclaimers is printed in bold, capital, underlined letters, and states "**<u>DISCLAIMER OF IMPLIED WARRANTY</u>**." Directly above the disclaimer is a picture of a scroll with the word warranty written on it, which further draws the attention of the reader's eye. In addition, the disclaimer itself contains the terms "AS IS" and "IMPLIED WARRANTY OF MERCHANTABILITY," and both terms are printed in capital letters. Thus, under state law, the disclaimers are conspicuous. *See* 810 ILCS 5/2-316(2); 810 ILCS 5/1-201(1) ("Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. . . . Whether a term or clause is 'conspicuous' or not is for decision by the court."); *see also R.O.W. Window Co. v. Allmetal, Inc.*, 856 N.E.2d 55, 59 (Ill. App. Ct. 2006) (although it was printed in "smaller, fine print" a disclaimer on an invoice was conspicuous because it was printed in all capital letters); *cf.*

*Bodine Sewer, Inc v. E. Illinois Precast, Inc.*, 493 N.E.2d 705, 709 (Ill. App. Ct. 1986)

(disclaimer, printed in small print on the back of a document, was inconspicuous because "there

was nothing on the face of the [document] which would have specifically directed . . . attention

to the existence of a disclaimer of all warranties on the reverse sides").

The plaintiffs' reference to a minute order in another case in which BMS was a defendant

is unpersuasive. *Miles v. Barrington Motor Sales, Inc.*, No. 03 C 3283, Dkt. #25 (N.D. Ill. Jul.

22, 2003)(Conlon, J.). In that case, the court concluded that the disclaimer was inconspicuous

because "the provision fail[ed] to mention exactly who [was] disclaiming the warranty," in that

the relevant part of the form was left blank. Here, however, the form specifically states "dealer"

in the section identifying who was disclaiming the warranty. Thus, the court rejects the

plaintiffs' argument that the implied warranty disclaimer was inconspicuous.

ii.     *Unconscionability*

The plaintiffs request a full hearing on the issue of unconscionability pursuant to 810

ILCS 5/2-302(2), which provides that:

> When it is claimed or appears to the court that the contract or any clause thereof
> may be unconscionable the parties shall be afforded a reasonable opportunity to
> present evidence as to its commercial setting, purpose and effect to aid the court
> in making the determination.

Illinois precedent teaches that "[w]hile . . . the question of the unconscionability of a

clause is for the court to decide, the court before making this determination must give the parties

a reasonable opportunity to present evidence . . . .[g]enerally a full hearing on the issue is

required." *Frank's Maintenance, Etc. v. C. A. Roberts Co.*, 408 N.E.2d 403, 409 (Ill. App. Ct.

1980); *see also Basselen v. General Motors Corp.*, 792 N.E.2d 498, 507 (Ill. Ct. App. 2003),

*overruled on other grounds, Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 269 (Ill. 2006)

(holding that a hearing on the unconscionability of a disclaimer, made during trial  but outside the presence of the jury, was acceptable, and that a pre-trial hearing was not required).

BMS does not directly address the issue of unconscionability but instead mentions it tangentially in its discussion of inconspicuousness.  Indeed, BMS fails to discuss at all the applicability of § 5/2-302(2).  Nevertheless, in light of section 5/2-302 of the Illinois UCC, it is clear that the plaintiffs' claim of unconscionability must survive BMS's motion to dismiss in order to allow the court to receive evidence on the issue of unconscionability.  Accordingly, BMS's motion to dismiss the implied warranty claim is denied.

2.       *Revocation of Acceptance* (Count II)

BMS first argues that the plaintiffs cannot recover for revocation of acceptance because they have styled the claim as one under the MMWA.  BMS notes that, as to limited warranties, the MMWA itself provides no remedies for breach; rather state law provides the remedy.  Accordingly, BMS argues, because the plaintiffs have not alleged a claim for revocation of acceptance under state law, their claim should be dismissed.  The court is not persuaded.  As noted previously and as noted by BMS itself, the MMWA incorporates as a matter of law state law remedies into causes of action under the MMWA.  *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) ("The [MMWA] . . .  allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action.") (citation omitted) (vacated and remanded on other grounds).  Accordingly, the court rejects BMS' overly technical interpretation reading of the claim and denies the motion to dismiss on this ground.

BMS goes on to argue that the plaintiffs claim should be dismissed because revocation of acceptance is a remedy for breach of warranty, but it disclaimed all warranties.  Thus, BMS

argues, the plaintiffs cannot seek to revoke acceptance. However, as noted above, the issue as to whether BMS's disclaimer is unconscionable and therefore unenforceable has yet to be decided. Accordingly, because the conscionability of Barrington's disclaimer is still at issue, the court denies BMS' motion to dismiss the revocation of acceptance count.

**IV.     Conclusion**

In summary, the motions to dismiss filed by Caterpillar [218-1], Dometic [211-1], Monaco [205-1] , and BMS [208-1] are denied. Status is set for Tuesday, October 28, 2008, at 11 a.m.

**Date:** October 21, 2008

**Blanche M. Manning**
**United States District Judge**